IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                    Criminal Case No. 3:16cr103-2

DALLAS COGDELL, III,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Dallas Cogdell, III's Motion for

Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motion for

Compassionate Release"). (ECF No. 180.) The United States responded in opposition and Mr.

Cogdell replied. (ECF Nos. 189, 192.)

This matter is ripe for disposition. The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid the decisional process. For the reasons articulated below, the Court will deny the Motion for

Compassionate Release. (ECF No. 180.) The Court will deny as moot Mr. Cogdell's *pro se*

Motion for Compassionate Release. (ECF No. 137.)

## I.  Background

### A.    Mr. Cogdell's Underlying Offense

On September 6, 2016, Mr. Cogdell was charged with two counts in a three-count

indictment: one count of using force and violence, or intimidation, to take proceeds of

businesses that participate in interstate commerce ("Hobbs Act Robbery"), in violation of 18

U.S.C. § 1951 (Count One); and one count of using, carrying, or possessing a firearm during and

in relation to or in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count

Two). (ECF No. 23, at 1–2.) On November 14, 2016, Mr. Cogdell entered into a written plea agreement with the United States in which he pleaded guilty to Hobbs Act Robbery (Count One) and "carrying and using, by brandishing, and possessing a firearm during and in relation to and in furtherance of a crime of violence" (Count Two). (ECF No. 36 ¶ 1.)

The Plea Agreement and the Statement of Facts describe the conduct underlying Mr. Cogdell's offenses. (ECF Nos. 36, 37.) On May 12, 2016, Mr. Cogdell and his three co-conspirators entered a Walgreens in Henrico, Virginia. (ECF No. 37 ¶ 4.) All four men wore masks. (ECF No. 37 ¶ 4.) Two co-conspirators demanded that D.R., the store employee at the front counter, hand over money from both cash registers. (ECF No. 37 ¶ 4.) The two yelled and cursed at D.R., urging her to move faster and beginning to count down from five, and D.R. complied. (ECF No. 37 ¶ 4.) One of the men pointed a firearm on D.R., and the pair threatened to shoot her if she "touched any buttons." (ECF No. 37 ¶ 4.) After stealing D.R.'s iPhone and money from two cash registers, the two men ordered her onto the floor. (ECF No. 37 ¶ 4.)

Meanwhile, Mr. Cogdell and the third co-conspirator walked to the pharmacy area at back of the store, where they encountered a second employee, C.D. (ECF No. 37 ¶¶ 5, 10.) Mr. Cogdell jumped over the counter where C.D. stood, pointed a black firearm at her, and demanded money from the cash registers. (ECF No. 37 ¶ 5.) The co-conspirator told Mr. Cogdell that he needed to "cap this bitch," and Mr. Cogdell placed the firearm to C.D.'s head, demanded that she open the cash registers at the pharmacy's drive-through window, and counted down while telling her to hurry. (ECF No. 37 ¶ 5; *see* ECF No. 37 ¶ 10.) After C.D. complied, the two men told her to get on the floor and then fled. (ECF No. 37 ¶ 5.) In total, the four co-conspirators stole approximately $480.00. (ECF No. 37 ¶ 5.)

2

Four days later, on May 16, 2016, the same four men robbed another Walgreens Pharmacy store, this time in Durham, North Carolina. (ECF No. 37 ¶ 6.)  Mr. Cogdell and two co-conspirator entered the store wearing masks and blue latex gloves. (ECF No. 37 ¶ 6.)  One co-conspirator pointed a firearm at M.S., an employee at the store's front counter, and demanded money from the cash registers. (ECF No. 37 ¶ 6.)  After stealing the register funds and M.S.'s wallet, the co-conspirator instructed M.S. to open a safe and cash register in the store's "photo center." (ECF No. 37 ¶ 6.)  Simultaneously, Mr. Cogdell and the second co-conspirator went to the pharmacy at the store's rear, where they jumped the counter and pointed a firearm at a pharmacist, P.T. (ECF No. 37 ¶ 6.)  They stole P.T.'s cell phone and demanded that P.T. open the cash registers and give them Percocet and Vicodin from the pharmacy. (ECF No. 37 ¶ 6.)  P.T. complied, giving them one bottle of Oxycodone and four bottles of Vicodin in a Walgreens plastic bag. (ECF No. 37 ¶ 6.)  Mr. Cogdell and the co-conspirator then ordered P.T. to the "photo center," forcing him to get on the floor with M.S. (ECF No. 37 ¶ 6.)  The three men fled the store with money and medication totaling $4,814.42 in value. (ECF No. 37 ¶ 6.)

During this second robbery, Mr. Cogdell and his co-conspirators did not notice a third employee, who escaped to the store's main office and called police. (ECF No. 37 ¶ 7.)  A Durham police officer arrived on the scene and witnessed an orange Plymouth Neon leaving the area. (ECF No. 37 ¶ 7.)  The officer saw that the car held four male occupants and bore Virginia license plates. (ECF No. 37 ¶ 7.)  The officer stopped the vehicle and observed, in plain view within the car, a black and silver firearm, blue latex gloves, currency, and a plastic Walgreens bag containing prescription bottles matching those reported stolen. (ECF No. 37 ¶ 7.)  A search of the vehicle yielded one bottle of Oxycodone, four bottles of Vicodin, U.S. currency, M.S's identification and bank cards, blue latex gloves, one black 9mm handgun, and one black and

3

silver 9mm handgun. (ECF No. 37 ¶ 8.) Mr. Cogdell and his co-conspirators were subsequently

arrested. (ECF No. 37 ¶ 9.)

On May 24, 2016, during an interview with the Federal Bureau of Investigation, Mr.

Cogdell admitted to owning the recovered black firearm and to participating in the Henrico

Walgreens robbery on May 12, 2016. (ECF No. 37 ¶¶ 9–10.) Mr. Cogdell identified himself, by

photo, as the individual who jumped over the pharmacy counter during that incident. (ECF No.

37 ¶ 10.)

Furthermore, Mr. Cogdell confessed to perpetrating seventeen additional robberies and

one attempted robbery in the Eastern District of Virginia and two more robberies in North

Carolina. (ECF No. 37 ¶¶ 10–11). Each robbery, which occurrence between October 24, 2015

and May 16, 2016 involved actual and threatened force, violence, and fear of injury to an

employee by brandishing a firearm. Mr. Cogdell admitted that a firearm was brandished during

each of these twenty-one robberies and the robbery attempt during that seven month time frame.

(ECF No. 37 ¶¶ 10–11).

**B.**     **Mr. Cogdell's Plea Agreement and Appeal**

Before Mr. Cogdell's 2017 sentencing, the probation officer prepared the Presentence

Report ("PSR"), which summarizes Mr. Cogdell's offense level and criminal history. (ECF No.

53.) Mr. Cogdell's sole prior adult conviction, for "No Driver's License," conferred zero

criminal history points, placing him in Criminal History Category I.[1] (ECF No. 53 ¶¶ 167–68.)

---

[1] In the 2023 Criminal History Amendments to the Untied States Sentencing Guidelines, Part A of Amendment 821 (status points under § 4A1.1) and Part B of Amendment 821 (Zero-Point Offenders) changed this guideline and did so, importantly, retroactively. What is now U.S.S.G. § 4A1.1(e) — relative to the former § 4A1.1(d) — can reduce the number of points applicable to an offender's criminal history when the offense was committed while under a

Mr. Cogdell's Combined Adjusted Offense Level subtotaled 35, but he received a three-point reduction pursuant to U.S.S.G §§ 3E1.1(a) and (b), resulting in a Total Offense Level of 32. (ECF No. 37 ¶¶ 160, 163–65).  Mr. Cogdell's Criminal History Category and Total Offense Level yielded a Sentencing Guidelines range of 121 to 151 months' imprisonment on Count One.[2]  (ECF No. 53 ¶ 208.)  Count Two carried a mandatory minimum of 84 months' imprisonment to be served consecutively to any other term imposed, resulting in a Guideline Range of 205 to 235 months' imprisonment.  (ECF No. 53 ¶ 208; *see* ECF No. 53 ¶ 161.)

In his Fed. R. Crim. P. 11(c)(1)(C) binding Plea Agreement, Mr. Cogdell agreed to a prison term of "360 months' incarceration, composed of a sentence of 240 months' incarceration on Count One to run consecutive to 120 months' incarceration on Count Two," exceeding the upper bounds of his Guidelines range.  (ECF No. 36 ¶ 3.)  On February 22, 2017, this Court accepted Mr. Cogdell's plea and imposed the agreed-upon 360 months' imprisonment.  (ECF No. 83, at 2.)  The Court also ordered five years of supervised release following Mr. Cogdell's prison term, comprising three years' supervision on Count One and five years' supervision on Count Two, to be served concurrently.  (ECF No. 83, at 3.)  As part of his plea agreement, Mr. Cogdell waived his right to appeal his sentence.  (ECF No. 36 ¶ 7.)  On February 2, 2018,

---

criminal justice sentence.  The application to zero-point offenders could also reduce an individual's total offense level.  U.S.S.G. § 4C1.1.

Nothing in Amendment 821 would alter what would be the calculated Criminal History Category of I in Mr. Cogdell's case.  Furthermore, because Mr. Cogdell's offense involved the "use of violence or credible threats of violence" and he possessed a firearm in connection with the offense, he is not eligible for a decrease in his offense level under U.S.S.G. § 4C1.1(a).  His final recommended guidelines are unaffected by Amendment 821.

[2] Count One carried a statutory maximum term of twenty years' imprisonment.  (ECF No. 36, at 1; ECF No. 53 ¶ 208.)

however, Mr. Cogdell filed a notice of appeal, (ECF No. 108), which the United States Court of Appeals for the Fourth Circuit dismissed, (ECF No. 123).

As of November 5, 2024, Mr. Cogdell has served 101 months and 20 days of his 360-month term of imprisonment, or approximately twenty-eight percent of his sentence. (*See* ECF No. 193, at 1.) Mr. Cogdell is currently housed at FCI Yazoo City Low II in Yazoo City, Mississippi. *Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited November 5, 2024). The Bureau of Prisons ("BOP") lists Mr. Cogdell's projected release date as March 26, 2042. *Id.*

### C.    Mr. Cogdell's Motion for Compassionate Release

On June 2, 2023, Mr. Cogdell, acting through counsel, filed the instant Motion for Compassionate Release, incorporating his previously filed *pro se* motion by reference. (ECF Nos. 180, 137.) Mr. Cogdell requests that this Court "reduce [his] sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), in light of [the offered] extraordinary and compelling reasons for a reduction." (ECF No. 180, at 14.)

In the instant Motion, Mr. Cogdell contends that three reasons exist to find extraordinary and compelling reasons for his release: (1) his father's poor health and consequent need for care; (2) his relative youth at the time of his offenses; and (3) sentencing reform since *United States v. Booker*, 543 U.S. 220 (2005). (ECF No. 180, at 7–13.)

### 1.    Mr. Cogdell's Family Circumstances

First, Mr. Cogdell avers that his father requires daily care due to his numerous serious ailments. (ECF No. 180, at 7–8; *see* ECF No. 180-1, at 1.) At the time of filing, Mr. Cogdell's father was 52 years old and suffered from medical conditions including "anemia, chronic recurrent depression, cardiac palpitations, right arm hemiparesis post stroke sequelae,

6

aneurysmal IA septum, coronary artery disease, aortic root dilation, edema of his legs, enlarged

prostrate [sic], hypertension, essential tremor, gait instability, peripheral neuropathy, prediabetes,

peripheral vascular disease, vitamin D deficiency and moderate cognitive disability." (ECF No.

180, at 7–8.)  Additionally, Mr. Cogdell's father suffered a "massive stroke" in 2013 and a

"minor stroke" in 2020, which limited the function on his body's right side and caused him

blurred vision, respectively.  (ECF No. 180, at 8.)  In his Motion, Mr. Cogdell stated that his

father was then relying "on his brother, medical power of attorney, and caregiver for

instrumental activities of daily living and coordination of his healthcare."[3]  (ECF No. 180, at 8

(citing ECF No. 180-1, at 1).)  Mr. Cogdell states that, were he released, he would "live with his

father in Arizona and take on the roles of daily caregiver and medical power of attorney."  (ECF

No. 180, at 8.)

## 2.    Mr. Cogdell's Age at the Time of the Offenses

Second, Mr. Cogdell argues that his "'youth [at the time of his offenses], combined with

society's evolving understanding of the adolescent brain, constitute[s]' an extraordinary and

compelling reason for reducing [his] sentence." (ECF No. 180, at 8 (second alteration in

original).)  At the time of filing, Mr. Cogdell asserted that, in the approximately six and a half

years since his sentencing, the United States Congress, the United States Sentencing

Commission, and the Supreme Court of the United States have "acknowledged the mitigating

impact of adolescents' neurobiology." (ECF No. 180, at 8.)  According to Mr. Cogdell, the

courts and scientific research support the notions that (1) individuals in their early twenties are

---

[3] In his Reply, Mr. Cogdell clarifies that his father's "brother, medical power of attorney, and caregiver" are three discrete persons.  (ECF No. 192, at 2.)

less culpable for their criminal acts, (2) a defendant's age and recidivism risk negatively correlate, and (3) older people are less violent than their younger peers. (*See* ECF No. 180, at 8–12.)  Given that Mr. Cogdell was 23[4] years old when he began engaging in the conduct underlying his offenses here, he contends that his age "is another factor that weighs in favor of finding extraordinary and compelling reasons exist to reduce his sentence." (ECF No. 180, at 12.)

### 3. Changes to Sentencing Practices

And third, although Mr. Cogdell entered into a binding plea agreement with the United States prior to his sentencing, he avers that "the laws related to sentencing for [his] charges have changed," and "this new sentencing rubric would have been taken into account had plea negotiations taken place today." (ECF No. 180, at 12.)  Mr. Cogdell does not state which sentencing-law amendments he believes to be relevant here. (*See* ECF No. 180.)  Instead, he alludes to Codefendant Dikembwe Ja-Haan Akil Jones's Motion for Compassionate Release ("Mr. Jones's Motion"), (ECF No. 167), and Reply, (ECF No. 175), in which "Mr. Jones raised the same issues," (ECF No. 180, at 12–13).  "Mr. Cogdell hereby adopts those arguments." (ECF No. 180, at 13.)  Mr. Jones employs only one relevant argument, which concerns

---

[4] Mr. Cogdell asserts that he was 22 years old during the commission of the first robbery on October 24, 2015. (*See* ECF No. 180, at 12.)  However, Mr. Cogdell was born on October 9, 1992, (ECF No. 153, at 2), which would make him 23 years old on October 24, 2015.

compounding ("stacking") multiple 18 U.S.C. § 924(c)[5] charges.[6] (*See* ECF Nos. 167, 175.)

Mr. Jones argues that, despite being charged with only a single § 924(c) violation, the Court

should find an extraordinary and compelling reason for his release in the recent prohibition on

stacking such charges. (*See* ECF No. 167, at 5; ECF No. 175, at 1.)

---

[5] "Offenses under 18 U.S.C. § 924(c) involve the use or carrying of a firearm during and in relation to a crime of violence or drug trafficking crime, or the possession of a firearm in furtherance of those crimes." *Section 924(c) Firearms*, U.S. SENT'G COMM'N, https://www.ussc.gov/research/quick-facts/section-924c-firearms (last visited October 10, 2024).

[6] In Mr. Jones's Motion, he discusses subsequent changes to sentencing laws only briefly:

> Obviously, [Mr. Jones] had gotten a break by not being charged with the other robberies. Nevertheless, he agreed to a sentence well over the guidelines. Today, given the various decisions concerning stacking 924([c]) charges, it is not at all clear that [Mr.] Jones would have received a sentence of 324 months, even if charged and/or convicted of some or all of the other robberies.

(ECF No. 167, at 5.) Mr. Jones does not identify or describe any of the "various decisions" on which he relies. (*See* ECF No. 167, at 5.) However, Mr. Jones more fully outlines his "stacking" argument in his Reply, writing:

> The plea was negotiated between the parties with the underlying assumption that stacking the firearm sentences would occur if the case went to trial or Jones would plead guilty without a plea agreement. Thus, the 240 months was negotiated and considered fair in those circumstance[s]. However, now that that assumption has been altered, and stacking does not occur, reconsideration should be given. He would never have negotiated a plea for 240 months plus the 84, since his guidelines were 135–168. If this Court would have deviated upwards to 240 months plus the 84, on a guilty plea without an agreement, then so be it. If, however, the Court would have stayed within the guidelines, then it would be appropriate in this situation to reduce [Mr.] Jones'[s] sentence from 240 months to 158 months, with the 84 months for the firearm to remain consecutive.

(ECF No. 175, at 1.) Neither Mr. Jones's Motion nor his Reply contains any citation to support his § 924(c) "stacking" contention. (*See* ECF Nos. 167, 175.)

### 4.    The Effect of § 3553(a) Statutory Sentencing Factors

Finally, Mr. Cogdell contends that the Statutory Sentencing Factors listed in 18 U.S.C.

§ 3553(a)[7] support a substantial reduction of his sentence. (ECF No. 180, at 13–14.) Mr.

Cogdell argues that (1) the serious nature of his offense is mitigated by his youth at the time; (2)

---

[7] Section 3553(a) of Title 18 of the United States Code states:

The [c]ourt in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
> (5) any pertinent policy statement—
>
>> (A) issued by the Sentencing Commission . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

his efforts toward rehabilitation speak positively to his history and characteristics; and (3) reducing Mr. Cogdell's sentence "would promote respect for the law and avoid disparities by recognizing the change in sentencing practices while still holding Mr. Cogdell accountable," and it would affect sufficient deterrence because Mr. Cogdell "has still served a long sentence that communicates the serious nature of his offense conduct." (ECF No. 180, at 14.)

### 5.   The United States' Response

In its opposition, the United States contends that because Mr. Cogdell did not previously raise multiple arguments on which his instant Motion relies, he has not exhausted his administrative remedies and he should be precluded from raising those two novel claims with the Court. (ECF No. 189, at 9.)  Specifically, the United States asserts that Mr. Cogdell did not exhaust administrative remedies because, in his April 2, 2021 message to the BOP, he "did not argue, as he now claims in his motion, that he should receive relief due to his youth at the time of the offense and because of the changes in law since his sentencing." (ECF No. 189, at 9.)

The United States argues that, even if Mr. Cogdell exhausted administrative remedies, Mr. Cogdell's familial circumstances, his youth, any intervening changes to sentencing laws, and his § 924(c) sentence all fail to establish extraordinary and compelling reasons for Mr. Cogdell's release and that "the statutory sentencing factors [in 18 U.S.C. § 3553(a)] weigh against [his] release." (ECF No. 189, at 20; *see* ECF No. 189, at 12–25.)

### 6.   Mr. Cogdell's Reply

In his reply, Mr. Cogdell counters that, on approximately June 14, 2023, he sent a second request for compassionate release to the BOP, which included all three arguments on which the instant Motion relies. (ECF No. 192, at 1.)  At the time of the Reply, more than thirty days had passed since Mr. Cogdell's second BOP request submission. (ECF No. 192, at 2.)

## II.  Compassionate Release Under the First Step Act of 2018

### A.      Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP.  *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020).  In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[8]  First Step Act of 2018, Pub. L. No.

---

[8] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts

on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C.

§ 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-

conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019)

(requiring consideration of post-conviction evidence and statutory sentencing factors in the

context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v.*

*McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to

§ 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient

grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[9]

### B.    Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been

imposed", the defendant may bring a motion to modify his or her sentence "after the defendant

has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on

the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of

the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A); *see also United*

*States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of

---

[9] 28 U.S.C. § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-CR-4 (RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

Importantly, "the defendant is not required to exhaust his [or her] administrative remedies with the BOP *at all* beyond making the initial request for compassionate release." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) (emphasis in original).  Consequently, there is "no reason to limit [the defendant's] motion for compassionate release in the district court to only those grounds for compassionate release he [or she] identified in his [or her] request to the BOP." *Id.*

### C.   Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the statute.  The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023).  The Sentencing Commission:

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider.  For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with

a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at \*4, n. 7 (cleaned up for readability) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;
> (C) family circumstances; and,
> (D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[10]

These are:

> (1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[11];
>
> (2) the defendant's age, *id.* § 1B1.13(b)(2)[12];

---

[10] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[11] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[12] *See* App. A, at **U.S.S.G § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[13];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4) [14];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5) [15], and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[16]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

---

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

[15] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

[16] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[17] The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (confirming that under the 2023 Amendments Courts can still "consider any extraordinary or compelling reason for release raised by a defendant").

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and

---

[17] As other courts have observed,

[t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach this question, however, because [Mr. Cogdell] has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

compelling reason" for compassionate release.[18] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–24 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)");

A plethora of unpublished cases follow this same reasoning. *See, e.g., United States v. Banks*, No. 3:13-CR-00003, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more

---

[18] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c).

than three years longer than the high end of the guidelines that would have applied under *Norman*"[19] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, No. 3:11-CR-15, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief"). When considering the 2018 congressional modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444 F. Supp. 3d at 723).

### 1. Family Circumstances of the Defendant

The 2023 Sentencing Guidelines Amendments provide that family circumstances of the defendant could create extraordinary and compelling reasons that may justify a reduced sentence.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT. —
\*  \*  \*
(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

U.S.S.G. § 1B1.13(b)(3)(C).

---

[19] *United States v. Norman*, 935 F.3d 232, 237 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" given that the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

### 2.   Unusually Long Sentence

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court

should consider when considering unusually long sentences as a basis for an extraordinary and

compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (6)   UNUSUALLY LONG SENTENCE.—If a defendant received an
> unusually long sentence and has served at least 10 years of the term
> of imprisonment, a change in the law (other than an amendment to
> the Guidelines Manual that has not been made retroactive) may be
> considered in determining whether the defendant presents an
> extraordinary and compelling reason, but only where such change
> would produce a gross disparity between the sentence being served
> and the sentence likely to be imposed at the time the motion is filed,
> and after full consideration of the defendant's individualized
> circumstances.

U.S.S.G. § 1B1.13(b)(6).

### C.   Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate

release, the Court must then consider the Section 3553(a) factors and any relevant post-

conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A);

*Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors

including "the nature and circumstances of the offense and the history and characteristics of the

defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence

imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal

conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C.

§ 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences

available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(3), (4).

### III.  Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 180.)  While Mr. Cogdell has exhausted his administrative remedies, the Court concludes that Mr. Cogdell does not offer any "extraordinary and compelling reasons" to support his request for release.  18 U.S.C. § 3582(c)(1)(A)(i).  Even if he had done so, the § 3553(a) factors weigh against his release.

### A.  Mr. Cogdell Has Exhausted His Administrative Remedies and There Is No Procedural Barrier to Granting his Release

Mr. Cogdell has exhausted his administrative remedies.  On April 2, 2021, Mr. Cogdell "filed a request for consideration for compassionate release with the warden [of the BOP facility in which he was housed] citing a desire to care for his ailing father," which the warden denied on April 28, 2021.[20]  (ECF No. 180, at 6.)  The BOP did not respond to this request within 30 days, allowing Mr. Cogdell to file a Motion for Compassionate Release in district court.

While the United States concedes that Mr. Cogdell filed an administrative request in 2021 for compassionate release to care for his father, (ECF No. 189, at 9), it argues that the Court should nonetheless dismiss Mr. Cogdell's motion for compassionate release regarding his claims that he should receive relief due to his youth at the time of his offense.  (ECF No. 189, at 6.)  The United States contends that Mr. Cogdell failed to exhaust his administrative remedies with regard to this youthful conduct claim.  (ECF No. 189, at 6.)  In Mr. Cogdell's reply, he responds that

---

[20] The record does not contain any original documents that corroborate Mr. Cogdell's claims that he sent a request for compassionate release to his BOP facility's warden or that the warden responded.  However, in its Memorandum in Opposition to the Motion for Compassionate Release, the United States does not contest these assertions and agrees that "[i]n his April 2021 administrative request, the defendant asserted that he was entitled to compassionate release because he was needed to provide care to his ailing father."  (ECF No. 189, at 9.)

21

although his initial request to the warden did not raise issues of his youth at the time of the offense and changes to the sentencing law, he filed a second request "on or about June 14, 2023" addressing this claim. (ECF No. 192, at 1.) Counsel for Mr. Cogdell admitted that they were "not certain what day the warden received the second request for compassionate release [but that] more than thirty days have passed since Mr. Cogdell submitted that request[.]" (ECF No. 192, at 1-2.) Although the date of the warden's receipt of this second request is unknown, more than thirty days have passed since the filing of this request. (ECF No. 192, at 1–2.)

In *United States v. Gray*, the district court dismissed the defendant's motion for compassionate release after the defendant made new arguments before the district court that were not presented to the BOP. No. 1:08-CR-273 (CMH), 2021 WL 3883653, at *1 (E.D. Va. Aug. 10, 2021) (citing *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021)). But in *United States v. Ferguson*, the Fourth Circuit noted that the BOP regulation set forth in 28 C.F.R. § 571.61(a)(1) "does not purport to apply to the inmate's request to the district court or limit the district court's consideration to only those reasons identified to the BOP." 55 F. 4th 262, 269 (4th Cir. 2022), *cert. denied*, No. 22-1216, 144 S.Ct. 1007 (Feb. 26, 2024).

It is true that Mr. Cogdell's initial request to the BOP did not include all the arguments which are present in his current Motion. However, this Court takes notice of the Fourth Circuit's observation in *Ferguson*: "in the absence of a statutory or regulatory issue exhaustion requirement, the Supreme Court has cautioned against judicially imposing such a requirement in a non-adversarial administrative proceeding." *Id.* The BOP compassionate release process is non-adversarial, and this Court declines to impose a strict exhaustion requirement and will instead consider Mr. Cogdell's Motion for Compassionate Release on the merits. This stance aligns with the rationale in *Ferguson* where the court "saw no reason to limit [the defendant's]

22

motion for compassionate release in the district court to only those grounds for compassionate release [the defendant] identified in his request to the BOP." *Id.* at 268.  Furthermore, Mr. Cogdell asserts that he submitted a second request "on or about June 14, 2023" containing the additional arguments for reduction.  (ECF No. 192, at 1.)  Because the BOP did not respond to either of Mr. Cogdell's requests within 30 days, this Court concludes that Mr. Cogdell meets the exhaustion requirement.

**B.      Mr. Cogdell's Family Circumstances Are Not an Extraordinary and Compelling Reason for His Release**

First, Mr. Cogdell argues that his father's health is an extraordinary and compelling reason for compassionate release.  (ECF No. 180, at 7–8.)  This Court acknowledges the difficult struggles that Mr. Cogdell's father experiences due to his health conditions and the likely emotional impact that this issue has on Mr. Cogdell. (*See* ECF No. 180, at 7–8.)  The 2023 Sentencing Guidelines Amendments provide that the defendant's family circumstances may be an extraordinary and compelling reason for his or her release.  *See* U.S.S.G. § 1B1.13(b)(3). However, the Guidelines specify that the incapacitation of the defendant's parent creates this extraordinary and compelling justification "when the defendant would be the *only* available caregiver for the parent."  *See* U.S.S.G. § 1B1.13(b)(3)(C) (emphasis added).  This Court and others in the Eastern District of Virginia have consistently applied this standard, finding that the failing health of a defendant's parent does not establish an extraordinary and compelling reason for the defendant's release when other caregivers are available.  *See United States v. Coleman*, No. 3:09cr207, 2024 WL 1559535, at *8 (E.D. Va. Apr. 10, 2024); *United States v. Brown*, No. 2:11-cr-152, 2024 WL 3357836, at *6 (E.D. Va. July 10, 2024); *Delavan v. United States*, No. 4:18-cr-023, 2024 WL 2958956, at *4 (E.D. Va. June 12, 2024).

Mr. Cogdell himself acknowledges that his father "currently relies on his brother, medical power of attorney, and caregiver for instrumental activities of daily living and coordination of his healthcare." (ECF No. 180, at 8.) Mr. Cogdell's mother and sister have also previously taken on caretaking roles. (ECF No. 180, at 8.) Mr. Cogdell fails to provide evidence as to why he is "uniquely situated" to tend to his father when there are already three individuals providing care. (*See* ECF No. 180, at 8; ECF No. 192, at 2.)  *See United States v. Holt*, No. 1:20-cr-0055-2, 2021 WL 2457064, at *6 (E.D. Va. June 16, 2021) ("[T]his Court is sympathetic to Defendant's mother's circumstances and the challenges attendant with caring for aging and ailing parents, yet... these difficulties do not present as 'extraordinary or compelling reasons for release.' This is so because it is not clear to the Court that Defendant is the *only* individual able to care for his ailing mother."). Given that several individuals already provide care to Mr. Cogdell's father, this Court cannot find that Mr. Cogdell's family situation constitutes an extraordinary and compelling reason justifying a reduction in sentence.

### C.    Mr. Cogdell's Age at the Time of His Offense Does Not Constitute an Extraordinary and Compelling Reason for Relief

Second, Mr. Cogdell asserts that since his sentencing, Congress, the Supreme Court, and the Sentencing Commission have all recognized "the mitigating impact of adolescents' neurobiology." (ECF No. 180, at 8.) Mr. Cogdell explains that since he was 23 years old at the onset of his offense conduct, his "young age is another factor that weighs in favor of finding extraordinary and compelling reasons exist to reduce his sentence." (ECF No. 180, at 12.) However, Mr. Cogdell fails to provide any individualized explanation as to why his young age at the time his offense conduct began should qualify him for relief.

Before the amended policy statement took effect, a defendant's "relative youth at the time of [his] offenses" was one of the factors courts considered in the compassionate-release inquiry.

*See McCoy*, 981 F.3d at 288 . In *McCoy*, the defendants were between the ages of 19 and 24 years old when they committed their offenses. *Id.* at 286. One defendant had "no relevant criminal history," another had "one minor prior conviction," and two more had no criminal history at the time of their offenses. *Id.* at 278. The relative youth of the *McCoy* weighed in favor of reducing their sentences. *Id.* at 288.

The Sentencing Commission's amended policy statement no longer addresses youth. *See* U.S.S.G. § 1B1.13.[21] However, "[o]ther [r]easons" may be considered to determine whether extraordinary and compelling reasons exist for relief. *See* U.S.S.G. § 1B1.13(b)(5) (recognizing that "other circumstance or combination of circumstances that, when considered by themselves or together with" the previously enumerated reasons, "are similar in gravity to" the enumerated reasons); *see also United States v. McCullers*, 704 F. Supp. 3d 659, 667 (E.D. Va. 2023) (considering youth under U.S.S.G. § 1B1.13(b)(5)); *United States v. Carrington*, No. 3:09-cr-160 (REP), 2022 WL 617617, at *7 (E.D. Va. Mar. 2, 2022) (same). But "nowhere does the caselaw indicate that youth alone is a sufficient basis for a sentence reduction absent some other factor that could, on its own, constitute an 'extraordinary and compelling' reason for relief." *United States v. Rucker*, No. 3:09-CR-00028, 2022 WL 1184670, at *3 (W.D. Va. Apr. 21, 2022).

---

[21] The United States Sentencing Commission proposes:

A two-part . . . [2024] amendment [to the U.S.S.G.] that includes (A) options to amend §[]4A1.2 (Definitions and Instructions for Computing Criminal History) to change how sentences for offenses committed prior to age eighteen are considered in the calculation of a defendant's criminal history score; and (B) an amendment to §[]5H1.1 to address unique sentencing considerations relating to youthful individuals.

*Proposed 2024 Amendments to the Federal Sentencing Guidelines*, U.S. Sᴇɴᴛ'ɢ Cᴏᴍᴍ'ɴ, https://www.ussc.gov/guidelines/amendments/proposed-2024-amendments-federal-sentencing-guidelines (last visited November 4, 2024).

Mr. Cogdell was 23 years old at the time the offense conduct began and only had one minor prior conviction. (*See* ECF No. 153 ¶ 167.) While Mr. Cogdell was of a younger age with just one misdemeanor when he began his offense conduct, that in and of itself does not amount to an extraordinary or compelling reason justifying early release.

### D.   Changes to "Stacking" Sentences Under 18 U.S.C. § 924(c) Are Not an Extraordinary and Compelling Reason for Mr. Cogdell's Release

Third, Mr. Cogdell argues that, despite his binding plea agreement, "the laws related to sentencing for Mr. Cogdell's charges have changed. Certainly this new sentencing rubric would have been taken into account had plea negotiations taken place today." (ECF No. 180, at 12.) Mr. Cogdell does not expressly identify the changes of law to which he refers, but he does incorporate by reference the § 924(c) "stacking" arguments that his codefendant Dikembwe Akil Jones advances in Mr. Jones's Motion for Compassionate Release and Reply. (*See* ECF No. 180, at 13 (citing ECF Nos. 167, 175).) The Court infers that Mr. Cogdell wishes the Court to apply to the facts of his case the "stacking" standard that the United States Court of Appeals for the Fourth Circuit established in *McCoy*.[22] (*See* ECF No. 140, at 11–37 (quoting *McCoy*, 981 F.3d 271).) Mr. Jones argues that "[t]oday, given the various decisions concerning stacking

---

[22] In his *Pro Se* Motion for Compassionate Release, Mr. Jones does not expressly argue that changes to § 924(c) "stacking" practices are an extraordinary and compelling reason for his release. (*See* ECF No. 140.) However, he does include a section entitled, "VI. Affirmed Published Opinions in Reference to 'Stacking Sentences' Under 924(c)." (*See* ECF No. 140, at 11.) The entirety of this section appears to comprise only the text of an appellate court opinion, with no identification of the text's source and no independent discussion of its contents. (*See* ECF No. 140, at 11–37.) Although this Court has not cross-referenced its every word, the text appears to be that of the *McCoy* opinion, reproduced verbatim. *Compare* (ECF No. 11–37), *with McCoy*, 981 F.3d.

In his subsequent Motion for Compassionate Release and Reply, Mr. Jones does expressly claim § 924(c) "stacking" changes as justification for his release, but he does not cite any supporting caselaw. (*See* ECF No. 167, at 5; ECF No. 175, at 1.)

924([c]) charges, it is not at all clear that [he] would have received [the same sentence], even if charged and/or convicted of some or all of the other robberies." (ECF No. 167, at 5.)  Mr. Cogdell incorporates these arguments, by reference, as his own. (*See* ECF No. 180, at 13.)

### 1.    **Mr. Cogdell's Sentence is Unlike Those of the *McCoy* Defendants**

The First Step Act's intervening change of law can create an extraordinary and compelling reason for compassionate release when, combined with "the severity of a § 924(c) sentence," there is an "enormous disparity between that sentence and the sentence a defendant would receive today[.]" *See McCoy*, 981 F.3d at 285.  In *McCoy*, the defendants were each convicted of multiple 924(c) violations with escalating "stacked" sentences, "which exposed the defendants to additional mandatory minimums and led to sentences ranging from 35 to 53 years of imprisonment." 981 F.3d at 274.  If the *McCoy* defendants had been sentenced after "stacking" practices ended, they would have received terms of imprisonment that were "dramatically shorter – in most cases, by 30 years – than the ones they received." *Id.*  Moreover, "the fact that § 924(c)'s mandatory minimums were the 'lion's share' of [the *McCoy* defendants'] sentence lengths" was a persuasive factor in granting their compassionate release. *United States v. Guess*, 576 F. Supp. 3d 370, 374 (E.D. Va. 2021) (citing *McCoy*, 981 F.3d at 277–79, 286).

Here, unlike in *McCoy*, Mr. Cogdell did not receive "stacked" 924(c) sentences, as he pleaded guilty to only one § 924(c) charge. (*See* ECF No. 36 ¶ 1.)  Although Mr. Cogdell agreed to a 120-month sentence on Count Two, well above the 84-month mandatory minimum sentence, his § 924(c) sentence comprises roughly 33% of his 360-month total prison term, making it far from "the lion's share" of his sentence. (*See* ECF No. 36 ¶ 3.)  Therefore, the cessation of "stacking" 924(c) sentences is not an extraordinary and compelling reason for his release.

**2.** **Eliminating the Possibility of "Stacking" Does Not Create an Extraordinary and Compelling Reason to Reduce Mr. Cogdell's Sentence**

Despite Mr. Cogdell's lack of "stacked" § 924(c) sentences, he maintains that the practice's elimination is an extraordinary and compelling reason for his release because his "plea was negotiated . . . with the underlying assumption that stacking the firearm sentences would occur if the case went to trial or [if Mr. Cogdell] . . . [pleaded] guilty without a plea agreement." (*See* ECF No. 175, at 1.)  Mr. Cogdell adopts Mr. Jones's argument that he agreed to an imprisonment term so far above his Guidelines only because he would have been vulnerable to "stacked" § 924(c) sentences had he refused. (*See* ECF No. 180, at 13.)  According to Mr. Jones's logic, if Mr. Cogdell were sentenced today, he would likely receive a prison term within his Guidelines range because the United States would no longer hold "stacking" as a plea-agreement bargaining chip. (*See* ECF No. 175, at 1.).

At least one other district court in this Circuit has refused to consider such a contention when the defendant received only one conviction under 18 U.S.C. § 924(c). *See Bostic v. United States*, No. 4:08-cr-00060-001-TLW-1, 2023 WL 6218206, at *5 (D.S.C. Sept. 25, 2023) ("Bostic cannot establish 'extraordinary and compelling reasons' based on . . . changes to the 'stacking' of § 924(c) convictions because his sentence is not the result of 'stacked' § 924(c) convictions. . . .)  Like *Bostic*, Mr. Cogdell's plea did not involve "stacked" sentences.

But this Court does not dismiss Mr. Cogdell's "stacking" arguments on this basis alone, as the United States' inability to pursue "stacked" § 924(c) sentences almost certainly would change both parties' plea-negotiation calculus.  Given Mr. Cogdell's particular circumstances, however, the Court rejects the notion that such updated calculus would clearly counsel Mr. Cogdell to reject his binding Plea Agreement as it stands.  Assuming, *arguendo*, that Mr. Cogdell

28

would refuse his current plea agreement absent the looming threat of "stacked" § 924(c)

sentences, the Court remains unconvinced that doing so would result in Mr. Cogdell's receiving a

sentence within his original guidelines.

The Court must place Mr. Cogdell's claims about the significant pressure of receiving

stacked sentences in the greater context of the circumstances under which the plea was

negotiated. Although the elimination of "stacking" would preclude the United Stated from

pursuing the escalated 25-year term of imprisonment for each additional § 924(c) violation

charged, the United States would remain free to pursue multiple § 924(c) charges with respective

seven-year consecutive sentences. *See* First Step Act, § 403(a), 132 Stat. 5194 (codified as

amended at 18 U.S.C. § 924(c)). Mr. Cogdell admits to committing twenty robberies (and one

attempted robbery) in two states over a seven-month period, all of which involved the

brandishing of a firearm. This torrent of violent conduct would certainly affect this Court's, and

any court's, evaluation of his sentence, even absent stacking. (*See* ECF No. 37 ¶¶ 3, 10–11.)

Indeed, these twenty-one violent acts are seven times greater than the three Bostic committed

that led to the binding plea in that case. Just those three robberies led the *Bostic* court to observe

that the plea agreement there clearly "was crafted in light of Bostic's violent conduct in

connection with the armed robberies and the violence [] used in committing those robberies."

*Bostic*, 2023 WL 6218206, at *5. So too here.

First, pursuing "stacked" § 924(c) charges was far from the only leverage point that the

United States held during the parties' original plea negotiations. Mr. Cogdell admitted to

committing twenty Hobbs Act Robberies and one attempted Hobbs Act Robbery, three of which

involved abduction and one of which involved the theft of a controlled substance. (*See* ECF No.

153 ¶ 17.) As charged, these factors enhanced their respective robberies' offense level, but the

29

United States presumably could have chosen to prosecute these offenses as discrete counts. (*See* ECF No. 153 ¶¶ 34–35, 54, 67.)

If Mr. Cogdell were sentenced today (or then on an unstacked basis), the United States would be free to charge him with all twenty § 924(c) violations detailed in the agreed-upon Statement of Facts, each carrying a consecutive seven-year sentence. (*See* ECF No. 37 ¶¶ 3, 10–11.) In such a scenario, Mr. Cogdell would be facing a potential sentence of 1,680 months', or 140 years', imprisonment on § 924(c) counts alone. The Court cannot conclude that the threat of stacked sentences would outweigh a decision to agree to a binding sentence of one-fifth of that worst case scenario.

Second, through his Plea Agreement, Mr. Cogdell secured the Middle District of North Carolina's and the Eastern District of North Carolina's relinquishing jurisdiction over robberies that Mr. Cogdell admits to committing in Durham, North Carolina and Apex, North Carolina, respectively. (*See* ECF No. 36 ¶ 12.) And finally, this Court's extensive colloquy during Mr. Cogdell's change of plea hearing – during which he repeatedly acknowledged the binding nature of the 360-month sentence *on him and the Court*, plainly evinces a lack of extraordinary and compelling reasons to grant his motion. *Bostic*, 2023 WL 6218206, at *6; (ECF No. 36.)

As other district courts of this Circuit have illuminated, "'not *all* defendants convicted under § 924(c) should receive new sentences.'" *See, e.g.*, *United States v. Guess*, 576 F. Supp. 3d at 374 (quoting *McCoy*, 981 F.3d at 287) (emphasis in original). Rather, it is the job of the court to perform "individualized assessments of each defendant's sentence" to determine whether extraordinary and compelling circumstances exist. *McCoy*, 981 F.3d at 286. None exist here. The Court cannot fully identify or weigh every factor the parties considered in negotiating Mr. Cogdell's Plea Agreement, (ECF No. 36), but it need not do so. Ultimately, the changes to

the "stacking" provision of § 924(c) would not significantly undermine the United States' bargaining power in a plea negotiation undertaken today, and the Court finds that this change to sentencing law does not create an extraordinary and compelling reason to reduce Mr. Cogdell's sentence.

C.      **The 3553(a) Factors Do Not Support a Reduction in Mr. Cogdell's Sentence**

Although Mr. Cogdell did not satisfy the requirement for an "extraordinary and compelling" reason for compassionate release, even if he had, the Court concludes that the § 3553(a) factors weigh against his release. This Court speaks to those factors in the interest of creating a full record. *See* 18 U.S.C. § 3553(a).

Upon review, the number of separate armed robberies involved in Mr. Codgell's underlying offense (eighteen in the Eastern District of Virginia, over a seven-month period) demonstrate that he presents a threat to the public through his disregard for the law. In each instance Mr. Cogdell and his co-conspirators entered into businesses and held employees at gunpoint while demanding money. Not only did Mr. Cogdell participate in these crimes, but he helped organize them. While Mr. Cogdell's only prior conviction was for driving without a license in 2016, for which he received a $100 fine, (ECF No. 153 ¶ 167), the nature and circumstances of this crime spree and the role Mr. Cogdell played in it weigh strongly against early release.

Further, Mr. Cogdell does not propose conditions of release that would ensure the safety of the community. Mr. Cogdell's release plan is to live with his father in Arizona. (ECF No. 180, at 8.) This does not convince the Court that Mr. Cogdell will not pose a danger to the public or that the safety of the community will be protected. The Court thus finds that the nature

and circumstances of Mr. Cogdell's offense, the totality of his record, and the need to protect the public outweigh granting his request for early release.

Mr. Cogdell next avers that his history and characteristics while incarcerated demonstrate his rehabilitation, highlighting his participation in various educational, therapeutic, and vocational courses. (ECF No. 180, at 13.) Mr. Cogdell stresses that his involvement in these programs evidence that he has "dedicated himself to rehabilitation, and that he is no longer the same 22-year-old who committed these offenses." (ECF No. 180, at 13.) However, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Furthermore, Mr. Cogdell does not appear to take responsibility for the six disciplinary infractions he received, including "Possessing Hazardous Tools, Phone Abuse, Refusing Work/Program Assignment, and three infractions of Refusing to Obey an Order." (ECF No. 193, at 2.)

Although Mr. Cogdell's accomplishments while incarcerated are laudable, they do not outweigh the continuing need for the sentence imposed to reflect the seriousness of the offense for which Mr. Cogdell was convicted. Mr. Cogdell's 360-month sentence is sufficient but not greater than necessary to reflect the seriousness of his conduct. Despite the achievements of Mr. Cogdell while incarcerated, the Court concludes that the record before it does not justify Mr. Cogdell's early release from federal imprisonment.

### IV.  Conclusion

For the reasons explained above, the Court will deny the Motion for Compassionate

Release.  (ECF No. 180.)  The Court will deny as moot Mr. Cogdell's *pro se* Motion for

Compassionate Release.  (ECF No. 137.)

An appropriate Order shall issue.


Date: 11/6/2024                                        _____
Richmond, Virginia                                    /s/
                                                      M. Hannah Lauck
                                                      United States District Judge

33